## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| MELVIN GOODMAN, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:20-cv-02779-JPM-cgc |
| v. ) | |
| ) | |
| VALERO REFINING COMPANY – ) | |
| TENNESSEE, LLC., ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Valero Refining Company Tennessee, LLC's ("Valero") Motion for Summary Judgment and accompanying Memorandum of Law in Support, both filed on July 29, 2022. (ECF Nos. 41, 42.) Defendant moves for summary judgment in its favor with respect to Plaintiff Melvin Goodman, Sr.'s claims under the Americans with Disabilities Act Amendments Act ("ADA"), the Tennessee Human Rights Act ("THRA"), and Tennessee common law tort. (See generally ECF No. 42.) Plaintiff filed a Response on September 6, 2022. (ECF No. 50.) Defendant filed a Reply on September 20, 2022. (ECF No. 55.)

For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

**I.     BACKGROUND**

   *A.     Undisputed Facts*

This is an employment discrimination case related to the alleged harassment, as well as the ultimate discharge, of Plaintiff Melvin Goodman Sr., a longtime employee of Valero.

Defendant operates a refinery in Memphis, Tennessee.  (ECF No. 43 ¶ 1; ECF No. 50-1 ¶ 1.)  The refinery contains a laboratory.  (ECF No. 43 ¶ 2; ECF No. 50-1 ¶ 2.)  Plaintiff worked in this laboratory as a "Shift Tester," a job position whose responsibilities include "performing Quality Control testing on various samples (both water and hydrocarbon) for product certification, regulation compliance, and process unit monitoring."  (ECF No. 43 ¶¶ 3, 8; ECF No. 50-1 ¶¶ 3, 8.)  He was supervised by a Lab Supervisor, who reported directly to a Lab Manager.  (ECF No. 43 ¶ 2; ECF No. 50-1 ¶ 2.)  His employment with Defendant continued from approximately September 1, 2005 until November 22, 2019.  (ECF No. 43 ¶¶ 7–8; ECF No. 50-1 ¶¶ 7–8.)  He began work in the position of Shift Tester on June 6, 2016.  (ECF No. 43 ¶ 8; ECF No. 50-1 ¶ 8.)  Defendant was represented by a union in this position.  (ECF No. 43 ¶ 10; ECF No. 50-1 ¶ 10.)

Plaintiff was issued a Verbal Warning, Defendant's first level of discipline, for "failing to complete the required computer based training ("CBT"), failing [to] review and certify time cards for payroll processing purposes, and failing to respond to emails from management" on December 12, 2016.  (ECF No. 43 ¶ 15; ECF No. 50-1 ¶ 15.)  Plaintiff was issued a Written Reminder, Defendant's second level of discipline, for "failing to properly screen/interpret lab analysis before issuing certification" on January 26, 2017.  (ECF No. 43 ¶ 16; ECF No. 50-1 ¶ 16.)  Plaintiff was warned that this failure to meet performance expectations could result in damage to Defendant's business and could also lead to his discharge.  (ECF No. 43 ¶ 16; ECF No. 50-1 ¶ 16.)  Plaintiff was issued a second Written Reminder for repeated failures to don Personal Protective Equipment on April 20, 2018.  (ECF No. 43 ¶ 19; ECF No. 50-1 ¶ 19.)  During the first four months of 2018, Plaintiff was "coached" 16 times on his failures to meet Defendant's performance expectations.  (ECF No. 43 ¶ 19; ECF No. 50-1 ¶ 19.)

Plaintiff was on medical leave from his employment with Defendant from July 7, 2018 until January 7, 2019.  (ECF No. 50-1 at PageID 411; ECF No. 55 at PageID 472.)  This leave was related to eye surgery, and Plaintiff used a "large magnifying glass" at his workstation upon his return.  (ECF No. 50-1 at PageID 411; ECF No. 55 at PageID 472.)  Lab Manager Randell Beasley ("Beasley") testified that he was "surprised" Plaintiff was using this low vision aid, but also stated that he was "unconcerned" that Plaintiff was using it.  (ECF No. 50-1 ¶ 33; ECF No. 55 at PageID 473.)

Plaintiff complained to Defendant, making allegations that "other employees were making false accusations against him, [and that he was subjected to] workplace bullying[] and age discrimination" on January 21, 2019.  (ECF No. 43 ¶ 20; ECF No. 50-1 ¶ 20.)  Defendant investigated these allegations along with Plaintiff's union and could not substantiate them.  (ECF No. 43 ¶¶ 21–22; ECF No. 50-1 ¶¶ 21–22.)

Plaintiff was placed in a training program to improve his work performance, which was approved by his union, on April 15, 2019.  (ECF No. 43 ¶¶ 23–26; ECF No. 50-1 ¶¶ 23–26.)  Following Defendant's stint in a training program, he continued to fail to meet his performance expectations.  (ECF No. 43 ¶¶ 28–29; ECF No. 50-1 ¶ 28–29.)  Plaintiff was issued a Final Written Warning with Decision Making Leave, Defendant's most serious level of discipline short of termination, on September 5, 2019.  (ECF No. 43 ¶ 29; ECF No. 50-1 ¶ 29.)  He was issued this discipline for failure to "enter test data into the computer; test samples early during the shift to allow for re-analysis of the samples, if necessary; respond to emails from supervision; complete work assignments; perform duties in a timely manner; re-analyze Quality Control [] data when they fail; and review data before submission."  (ECF No. 43 ¶ 29; ECF No. 50-1 ¶ 29.)  At that time, Plaintiff submitted a letter to Defendant in which he "admitted his

consistent performance issues." (ECF No. 43 ¶ 31; ECF No. 50-1 ¶ 31.) Plaintiff subsequently had "no less than 12 performance problems in the same areas" in which he had previously failed to meet Defendant's expectations. (ECF No. 43 ¶ 34; ECF No. 50-1 ¶ 34.)

Plaintiff's counsel submitted a letter of complaint to Defendant on September 6, 2019, making allegations of harassment, age discrimination, and disability discrimination. (ECF No. 43 ¶ 34; ECF No. 50-1 ¶ 34.) In the months after he was issued a Final Written Warning and he submitted the letter of complaint, Plaintiff worked a heavier schedule than usual. (ECF No. 43 ¶ 33; ECF No. 50-1 ¶ 33.)

Plaintiff's employment with Defendant was terminated on November 22, 2019. (ECF No. 43 ¶ 35; ECF No. 50-1 ¶ 35.) The decisionmakers regarding this employment decision were the Refinery VP & General Manager and the Technical Director. (ECF No. 43 ¶ 36; ECF No. 50-1 ¶ 36.) They did not make any comments to Plaintiff regarding his age or perceived disability. (ECF No. 43 ¶ 37; ECF No. 50-1 ¶ 37.) Plaintiff was not told that he was being terminated because of his complaints, and these individuals did not direct "any negative or derogatory comments" toward him regarding his complaints. (ECF No. 43 ¶ 39; ECF No. 50-1 ¶ 39.)

  B. *Procedural Background*

Plaintiff "filed a charge of discrimination with the Equal Employment Opportunity Commission [] within three hundred days of the discrimination" and received a Right to Sue Notice within 90 days of filing the instant case. (ECF No. 3 ¶¶ 22–23.) On October 28, 2020, Plaintiff filed a Complaint against Defendant. (ECF No. 1.) On that same day, Plaintiff filed an Amended Complaint. (ECF No. 3.) Defendant filed an Answer on December 30, 2020. (ECF No. 9.)

On July 29, 2022, Defendant filed the instant Motion for Summary Judgment. (ECF No. 41.) This was accompanied by a Memorandum in Support (ECF No. 42) and a Statement of Undisputed Material Facts. (ECF No. 43.) Attached were the relevant deposition excerpts and exhibits of Plaintiff (ECF No. 43-1), the Declaration of Mike Sumter, the Human Resource Manager at Defendant's Memphis refinery as of 2019 (ECF No. 43-2), relevant deposition excerpts from Lab Supervisor Beasley (ECF No. 43-3), the relevant deposition excerpts and exhibits of Kenneth Jackson ("Jackson"), who was a Lab Supervisor at Defendant's Memphis refinery as of 2019 (ECF No. 43-4), a bank of coaching notes issued to Shift Testers, including Plaintiff (ECF No. 43-5), Defendant's Amended Answer to Plaintiff's Interrogatory No. 4 (ECF No. 43-6), and excerpts from Defendant's Employee Guide. (ECF No. 43-7.)

Plaintiff filed a Motion for Extension of Time to File Answer on August 25, 2022. (ECF No. 46.) That Motion was granted on the same day. (ECF No. 47.) Defendant filed a Motion for Reconsideration of Plaintiff's Extension of Time on August 29, 2022. (ECF No. 48.) Plaintiff filed a response to that Motion on the same day. (ECF No. 49.) Defendant's Motion for Reconsideration was denied on September 6, 2022. (ECF No. 53.)

Plaintiff filed a Response to Defendant's Motion for Summary Judgment of September 6, 2022. (ECF No. 50.) This was accompanied by Plaintiff's Response to Defendant's Statement of Undisputed Material Facts. (ECF No. 50-1.) Also attached was an exhibit containing Plaintiff's timesheets between September 1, 2019 and November 22, 2019 (ECF No. 51-1), and an exhibit containing a grievance Plaintiff filed with his union on December 10, 2019, regarding the termination of his employment, along with relevant communications. (ECF No. 51-2.)

Defendant filed a Response in Support of its instant Motion on September 20, 2022. (ECF

No. 54.) Defendant also filed a Reply to Defendant's Response on that same day. (ECF No. 55.) That document was accompanied by the Declaration of James Griggs, an HR professional at Defendant's Memphis refinery (ECF No. 55-1) and an excerpt from the Collective Bargaining Agreement between Defendant and Plaintiff's union. (ECF No. 55-2.)

## II.     LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the non-moving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448–49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587. "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted).

6

In order to "show that a fact is, or is not, genuinely disputed," a party must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." L.R. 56.1(b)(3); Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting Celotex, 477 U.S. at 325)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 251–52). Summary judgment "'shall be entered' against the non-moving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" Rachells v. Cingular Wireless Employee Servs., LLC, No. 1:08CV02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting Lujan

v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990)). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 251). "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his/her position." Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Liberty Lobby, 477 U.S. at 247–254; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)). "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." Rachells, 2012 WL 3648835, at *2 (quoting Thomas v. Christ Hosp. & Med. Ctr., 328 F.3d 890, 894 (7th Cir. 2003)). Statements contained in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient. Mitchell, 964 F.2d at 584–85.

### III. ANALYSIS

#### A. Employment Termination Claims

*1. Under the Americans with Disabilities Act Amendments Act ("ADA")*

Defendant is entitled to summary judgment on Plaintiff's disability discrimination claim. Plaintiff alleges in his Complaint that he was "regarded as a person having a disability." (ECF No. 4 ¶ 1.) He was allegedly subjected to discriminatory treatment because he took "medical leave . . . for eye surgery." (ECF No. 55 at PageID 472.) After his approximately five and a half month medical leave, Plaintiff returned to work and required a "large magnifying glass" at his workstation. (Id.) Plaintiff "avers that the real reason for his termination was

8

discrimination against him because he was regarded as a person having a disability" in the form of a visual impairment. (ECF No. 4 ¶ 19.)

There is no direct evidence that any of Defendant's employees displayed discriminatory animus against Plaintiff on the basis of perceived disability. There is no allegation that comments were made to Plaintiff regarding his eyesight. (ECF No. 43-1 at PageID 196; ECF No. 43-3 at PageID 253; ECF No. 43-4 at PageID 264.) Lab Supervisor Beasley stated that he was unconcerned with Plaintiff's use of a magnifying glass. (ECF No. 43-3 at PageID 254.) Lab Manager Jackson stated that he was aware of the magnifying glass, but never expressed concern. (ECF No. 43-4 at PageID 263–64.) Defendant's employees who made the decision to terminate Plaintiff's employment also made no comments to suggest that the decision was based on his perceived disability. (ECF No. 50-1 ¶¶ 36–37.)

Because there is no direct evidence of discrimination, Plaintiff's claim is subject to the burden-shifting framework set out in McDonnell Douglas. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 453 (6th Cir. 2004) (applying the McDonnell Douglas burden-shifting framework in the context of an ADA case). Under this framework, "[t]he burden is first on the plaintiff to demonstrate a *prima facie* case of [disability] discrimination; it then shifts to the employer to offer a legitimate, non-discriminatory explanation for its actions; finally, the burden shifts back to the plaintiff to show pretext-i.e. that the employer's explanation was fabricated to conceal an illegal motive". Chen v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir. 2009) (citing McDonnell Douglas, 411 U.S. at 802–04). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). To establish a *prima facie* case

of disability discrimination, a plaintiff must demonstrate that (1) he "has a disability," (2) he is "otherwise qualified for the position, with or without reasonable accommodation," (3) he "suffered an adverse employment decision," (4) his employer "knew or had reason to know" of his disability, and (5) he "was replaced or [his] position remained open." Williams v. AT&T Mobility Servs. LLC, 847 F.3d 384, 395 (6th Cir. 2017) (quoting Whitfield v. Tennessee, 639 F.3d 253, 259 (6th Cir. 2011)).

Plaintiff fails to establish a *prima facie* case on the first prong of this test. He cannot show that he was an individual with a disability within the meaning of the ADA. Relevantly, an individual is disabled within the meaning of the ADA if he "is regarded by his employer as having . . . an impairment" that substantially limits one or more of his major life activities. 42 U.S.C. § 12102(1). "An employee is regarded as disabled under the ADA if his employer (1) mistakenly believes that he has a physical impairment that substantially limits one or more major life activities, or (2) mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Simpson v. Vanderbilt Univ., 359 F. App'x 562, 567 (6th Cir. 2009) (citing Mahon v. Crowell, 295 F.3d 585, 593 (6th Cir. 2002)) (quotation marks omitted). This is "a question embedded almost entirely in the employer's subjective state of mind." Ross v. Campbell Soup Co., 237 F.3d 701, 709 (6th Cir. 2001).

Plaintiff argues that Defendant regarded him as disabled because he took five and a half months of medical leave for eye surgery and required a magnifying glass when he returned to work. (ECF No. 55 at PageID 472.) He establishes that his direct supervisors were aware of his use of this low vision aid. (ECF No. 43-3 at 254; ECF No. 43-4 at PageID 263–64.) However, mere awareness of Plaintiff's physical condition is insufficient to establish that Defendant regarded him as disabled. See Milholland v. Sumner Cnty. Bd. of Educ., 569 F.3d

562, 568 (6th Cir. 2009) ("That the defendants were aware of [an employee's] health issues does not support a conclusion that they misperceived her physical abilities as impaired and affecting her performance."). The record shows that Lab Manager Beasley was "surprised" that Defendant was using a low visual aid, but Beasley also states that he supported Plaintiff's use of a visual aid if it helped him complete his work. (ECF No. 43-3 at 254.) Plaintiff received numerous reprimands and warnings for poor work performance, but there is no evidence on the record that links these reprimands and warnings to his low vision or his use of a magnifying glass. In fact, these reprimands and warnings came both before and after his eye surgery. (See, e.g., ECF No. 50-1 ¶¶ 16–19, 29.) This is far from evidence that Defendant believed that Plaintiff was disabled, or that Defendant perceived his vision as impacting his life activities.

Construing the evidence in the light most favorable to Plaintiff, his disability claim must fail as he cannot set forth specific facts that would satisfy the first prong of his *prima facie* case and establish that he has a disability within the meaning of the ADA.

*2. Under the Tennessee Human Rights Act ("THRA")*

Defendant is entitled to summary judgment on Plaintiff's age discrimination claim. Plaintiff was 70 years old in 2019, when Defendant terminated his employment. (ECF No. 4 ¶ 4; ECF No. 9 at PageID 25.) Plaintiff alleges that the "true reason" for his termination was his age. (Id. ¶ 18.)

The THRA states, in relevant part, that "[i]t is a discriminatory practice for an employer to . . . discharge any person . . . because of such individual's . . . age." Tenn. Code Ann. § 4–21–401(a). An individual must be at least forty years old to establish an unlawful discrimination claim based on age. Tenn. Code Ann. § 4–21–101(b).

To prevail on an age discrimination claim under the THRA, a defendant must show by direct or indirect evidence that his age was a "determining factor" in his termination. Wallace v. City of Lewisburg, No. M201901690COAR3CV, 2020 WL 6390139, at *9 (Tenn. Ct. App. Oct. 30, 2020) (applying the determining factor standard); see also Wallace, 2020 WL 6390139 at *9 n. 6 (noting, in the context of a plaintiff citing cases under federal age discrimination law to support a THRA claim, that the but-for standard has not been adopted by Tennessee courts).

There is no direct evidence that any of Defendant's employees displayed discriminatory animus against Plaintiff on the basis of age. Defendant's employees who made the decision to terminate Plaintiff's employment made no comments to suggest that the decision was based on his perceived age. (ECF No. 50-1 ¶ 37.) Plaintiff's supervisors also made no comments regarding Plaintiff's age. (ECF No. 43-1 at PageID 198.)

Because there is no direct evidence of discrimination, Plaintiff's claim is subject to the burden-shifting framework set out in McDonnell Douglas, as articulated above. See McDonnell Douglas, 411 U.S. 792; see also Yount v. FedEx Express, 2016 WL 1056958, at *5 (Tenn. Ct. App. Mar. 17, 2016) (noting that Tennessee courts have adopted the McDonnell Douglas burden-shifting framework in applying the THRA). A plaintiff must demonstrate "(1) that he or she is a member of the protected class of persons forty years of age or older, (2) that his or her work performance satisfied the employer's reasonable expectations, (3) that he or she was actually or constructively terminated, and (4) that the termination occurred under circumstances giving rise to an inference of discrimination based on age" in order to make out a *prima facie* age discrimination claim under the THRA. Wilson v. Rubin, 104 S.W.3d 39, 52 (Tenn. Ct. App. 2002) (citing Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002).

Plaintiff fails to establish a *prima facie* case of age discrimination on the second prong of this test. It is undisputed that Plaintiff was issued a "Verbal Warning," a first level of discipline, for a number of failures to perform his job adequately on December 12, 2016. (ECF No. 50-1 ¶ 15.) Plaintiff received a "Written Reminder," the second level of discipline, for additional failures to perform his job adequately on January 26, 2017. (Id. ¶ 16.) Plaintiff was issued a second "Written Reminder" for multiple failures to wear appropriate PPE on April 20, 2018. (Id. ¶¶ 17–19.) He was also "coached" 16 times during the first four months of 2018. (Id. ¶ 20.) Plaintiff was then put in a personalized training program on April 15, 2019. (Id. ¶ 26.) Plaintiff's "performance issues continued" and he was then issued a "Final Written Warning with Decision Making Leave" on September 5, 2019. (Id. ¶¶ 29–30.) At that time he was warned that continued performance issues would result in his termination. (Id.; see also ECF No. 43-5.) On September 9, 2019 Plaintiff submitted a letter to Defendant in which he "admitted his consistent performance issues." (Id. ¶ 31.) Plaintiff then had 12 performance problems in the months between his final warning and his termination on November 22, 2019. (Id. ¶¶ 34–35.) While it is true that other Shift Testers were also reprimanded for failures on the job, the record shows that Plaintiff was responsible for the vast majority of coaching notes issued to Shift Testers by Defendant between 2016 and 2019. (ECF No. 43-5 at PageID 344–58) (indicating that Defendant received 69 coaching notes between April 14, 2016 and March 4, 2019). Plaintiff has produced no evidence that his job performance should, in fact, have been considered satisfactory by his employer.

Construing the evidence in the light most favorable to Plaintiff, his age discrimination claim must fail as he cannot set forth specific facts that would satisfy the second prong of his

*prima facie* case and establish that his work performance satisfied his employer's reasonable expectations.

### B. Other Claims

*1. Retaliation*

Defendant is entitled to summary judgment on Plaintiff's retaliation claims. Plaintiff claims that he was retaliated against in the scheduling of his work shifts and in his ultimate termination for protesting Valero's alleged discriminatory treatment. (ECF No. 4 ¶¶ 16, 20.) This claim of retaliation is brought pursuant to the ADA. (Id. ¶ 27.)

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

There is no direct evidence that any of Defendant's employees displayed discriminatory animus against Plaintiff in scheduling him or terminating his employment. Plaintiff's supervisors made no comments suggesting that his protests against his allegedly discriminatory treatment affected his work schedule. (ECF No. 50-1 ¶ 39.) Defendant's employees who made the decision to terminate Plaintiff also made no comments suggesting that the decision was based on these protests. (Id.)

Because there is no direct evidence of discriminatory retaliation, Plaintiff's claim is subject to the burden-shifting framework set out in McDonnell-Douglas, as articulated above. See McDonnell Douglas, 411 U.S. 792; see also Rorrer v. City of Stow, 743 F.3d 1025, 1046 (6th Cir. 2014) ("Because [the plaintiff] does not claim to have direct evidence of retaliation, this Court analyzes his claim for ADA retaliation using the McDonnell–Douglas burden-

shifting approach."). "The plaintiff bears the initial burden to establish a *prima facie* case of retaliation, which requires a showing that (1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." Rorrer, 743 F.3d at 1046.

Plaintiff fails to establish a *prima facie* case of retaliation on the fourth prong of this test. Plaintiff claims that he was scheduled for "grueling" shifts at his workplace after his lawyer sent a letter to Defendant alleging that Plaintiff was being discriminated against on September 6, 2019. (ECF No. 4 ¶ 15.) It is undisputed that Plaintiff worked "more shifts than normal" between approximately September 14, 2019, and November 18, 2019. (ECF No. 50-1 ¶ 33.) Defendant puts forward evidence that this heavier schedule was a result of employee leave. (ECF No. 43-4 at PageID 270.) Defendant also points to examples of other shift testers who worked schedules similar to Plaintiff's. (ECF No. 54 at PageID 465.)

Plaintiff's heavier schedule did begin only days after his counsel sent Defendant the September 6, 2019, letter. "However, temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." Imwalle v. Reliance Med. Prod., Inc., 515 F.3d 531, 550 (6th Cir. 2008). Plaintiff puts forward no other evidence that would tend to establish a causal connection between his heavy workload and his protest.

Plaintiff also alleges that his termination was retaliatory. (ECF No. 4 ¶ 20.) Plaintiff's attorney sent his protest to Defendant on September 6, 2019, and Plaintiff was terminated on November 22, 2019. (ECF No. 50-1 ¶¶ 32, 35.) The Sixth Circuit has held that an employment discharge that "came roughly two-and-a-half months after the complaint" did not support "an inference of causation." Kean v. IT–Works, Inc., 466 Fed. App'x. 468, 471 (6th Cir. 2012).

15

Even a one-month gap between protected activity and an adverse employment action, standing alone, may be insufficient. Nguyen v. City of Cleveland, 229 F.3d 559, 567 (6th Cir. 2000). Plaintiff puts forward only temporal proximity as proof of his retaliatory discharge, which is insufficient to establish a *prima facie* case. Imwalle 515 F.3d at 550. Defendant, on the other hand, puts forward significant evidence of a legitimate reason to terminate Plaintiff's employment, his admitted poor work performance. (See, e.g., ECF No. 50-1 ¶¶ 20, 26, 29–30, 31.)

Construing the evidence in the light most favorable to the Plaintiff, his retaliatory discharge claim must fail as he cannot set forth specific facts that would satisfy the fourth prong of his *prima facie* case and establish that there was a causal connection between his protected activity and either his work schedule or his termination.

*2. Hostile Work Environment*

Defendant is entitled to summary judgment on Plaintiff's hostile work environment claims. Plaintiff alleges in his complaint that he was subjected to a "hostile work environment" when he returned to work after undergoing eye surgery, in January of 2019. (ECF No. 4 ¶ 8.) This allegation stems from the conduct of "Lab Manager Randle Beasley and co-workers," who Plaintiff alleges lodged "false accusations" against him. (Id. ¶ 8.) These accusations were that he failed to do his work and that he was slow in doing his work. (Id.) He claims that this treatment was a function of discrimination against him on the basis of his age or perceived disability. (Id. ¶ 14.) Plaintiff also argues that his "grueling" work schedule amounted to a hostile work environment. (Id. ¶ 15.)

Defendants note in their reply that Plaintiff "did not make any argument" regarding his hostile work environment claim and argue that summary judgment should therefore be granted.

(ECF No. 54 at PageID 467.)  However, "[s]ummary judgment should not automatically be entered if unopposed." Hitachi Med. Sys. Am., Inc. v. Branch, No. 5:09CV01575, 2011 WL 3921718, at *12 (N.D. Ohio Sept. 7, 2011).  Uncontested summary judgment motions must still be examined by a district court to determine whether genuine issues of material fact remain, and whether judgment is appropriate as a matter of law.  Id.; see also Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008).

To establish that one was subjected to a hostile work environment under the ADA, a plaintiff must show, relevantly, that "[he] was disabled" within the meaning of the statute. Trepka v. Bd. of Educ., 28 F. App'x 455, 461 (6th Cir. 2002).  Plaintiff's hostile work environment claim under the ADA must fail here because, as discussed above, he cannot establish that he was disabled or that he was considered to be disabled by Defendant.

To establish that one was subjected to a hostile work environment under the THRA, a plaintiff must show "(1) he is a member of a protected class; (2) he was subjected to unwelcome harassment based upon his protected status; (3) the harassment created a hostile work environment; and (4) the employer is liable." Fite v. Comtide Nashville, LLC, 686 F. Supp. 2d 735, 752 (M.D. Tenn. 2010).  "In determining whether there is a hostile work environment, the court must consider the totality of the circumstances, including the frequency of the conduct, its severity, and the degree to which it interferes with work performance." Id. (citing Harris v. Forklift Sys., 510 U.S. 17, 22 (1993)).  "A work environment is hostile if, from an objective and subjective perspective, the harassment is severe and pervasive enough that an abusive working environment is created." Id. (citing Bowman v. Shawnee State Univ., 220 F.3d 456, 463 (6th Cir. 2000) (quotation marks omitted)).

Plaintiff fails to establish a claim that he was subject to a hostile work environment on the basis of his age on the second prong of the test. Defendant and the union which represented Plaintiff jointly investigated his January 21, 2019, complaint about harassment in the workplace. (ECF No. 50-1 ¶¶ 21–22.) Their investigation did not substantiate Plaintiff's complaint of workplace bullying and age discrimination. (Id. ¶¶ 22–23.) The investigation did find several instances of teasing, which had occurred some years prior. (ECF No. 43-2 ¶¶ 8–12.) Plaintiff does not put forward any evidence that this teasing was based upon his age, nor does he put forward evidence of any other harassment on the basis of his age.

Construing the evidence in the light most favorable to the Plaintiff, his hostile work environment claim must fail as he cannot set forth specific facts that would establish that he is disabled within the meaning of the ADA, nor can he establish that his alleged mistreatment in the workplace was based upon his age.

### 3. Common Law Tort

Defendant is entitled to summary judgment on Plaintiff's common law tort claims. Plaintiff argues that his work schedule and his termination amount to intentional infliction of emotional distress ("IIED") or outrageous conduct in violation of Tennessee common law. (ECF No. 4 ¶ 1.)

Under Tennessee law, outrageous conduct is not an independent tort, but "has gained widespread use as a substitute or shorthand for intentional infliction of emotional distress." Rogers v. Louisville Land Co., 367 S.W.3d 196, 205 (Tenn. 2012) ("[T]he claims [of outrageous conduct and intentional infliction of emotional distress] are one and the same"). To state a claim under the tort of IIED, "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct

complained of must result in serious mental injury." Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997) (citing Medlin v. Allied Inv. Co., 398 S.W.2d 270, 274 (1966)).

Plaintiff's claim fails under the second prong of this test. It is undisputed that Plaintiff worked "more shifts than normal" between approximately September 14, 2019, and November 18, 2019. (ECF No. 50-1 ¶ 33.) However, even if Defendant's scheduling rose to the level of malicious conduct, it would not satisfy the high standard of IIED. Bain, 936 S.W.2d at 622 (citing Medlin, 398 S.W.2d at 274). The Court cannot find that this work schedule, which complied with state and federal wage and hour laws and Defendant's workplace scheduling policy, could be considered "atrocious and utterly intolerable in a civilized community." Id. (citing Medlin, 398 S.W.2d at 274).

Construing the evidence in the light most favorable to the Plaintiff, his IIED claim must fail as his heavier-than-normal workplace schedule does not rise to the level of outrageous conduct.

### IV.  CONCLUSION

For each of the reasons set forth above, Defendant Valero's Motion for Summary Judgment is **GRANTED** in its entirety. Plaintiff's claims against Defendant are **DISMISSED WITH PREJUDICE**.

**SO ORDERED**, this 17th day of January, 2023.

                                                /s/ Jon P. McCalla
                                                JON P. McCALLA
                                                UNITED STATES DISTRICT JUDGE